IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

THE FORD PLANTATION CLUB, INC. )
and THE FORD PLANTATION )
ASSOCIATION, INC., )
 )
    Plaintiffs and Counter- )
    Defendants, )
 )
v. )   CASE NO. CV417-023
 )
MICHAEL MCKAY, Individually and )
as Trustee of the TARA HILL I )
REVOCABLE TRUST, )
 )
    Defendants and Counter- )
    Claimants. )
 )

## O R D E R

Before the Court are Plaintiffs and Counter-Defendants The Ford Plantation Club, Inc. and The Ford Plantation Association, Inc.'s Motion for Summary Judgment (Doc. 42) and Motion for Summary Judgment on Defendants' Counterclaims (Doc. 43). For the following reasons, Plaintiffs' motions are **GRANTED**. Plaintiffs are **DIRECTED** to provide this Court with an updated calculation of damages, including the per diem interest rate for both the outstanding association dues and outstanding club dues. Defendants counterclaims are **DISMISSED**.

### BACKGROUND

This case involves Defendants' purchase of real property in the Ford Plantation, a planned development in Richmond Hill,

Georgia. Plaintiff Ford Plantation Association ("Association") is a nonprofit corporation that is responsible for the ownership, operation and maintenance of the common areas of The Ford Plantation development, organized and existing in accordance with the duly-recorded Declaration of Covenants, Conditions, and Restrictions for The Ford Plantation (the "Association Declaration"). (Doc. 42 at 3.) The Association Declaration requires owners to pay assessments, expenses, and other charges for all periods of time during ownership. (Id.) Plaintiff Ford Plantation Club ("Club") is a nonprofit corporation responsible for the management and maintenance of the private, equity ownership, social and recreational club of The Ford Plantation development, organized and existing in accordance with the duly-recorded Club Declaration for The Ford Plantation Club, Inc. (the "Club Declaration") and the duly-recorded The Ford Plantation Club By-Laws (the "Club By-Laws"). (Id.) The Club is responsible for the management of various social and leisure amenities offered to individuals that own property in the development and have been accepted for membership in the Club. (Id. at 3-4.) Members of the Club are liable for the payment of membership dues, fees, contributions, operating assessments and other charges incurred. (Id. at 4-5.)

Defendant Michael McKay as Trustee of the Tara Hill I Revocable Trust (the "McKay Trust") is the owner of property

located at the Ford Plantation development. (Id. at 3.) Defendant Michael McKay applied for membership in the Club as the designated member of the McKay Trust and the McKay Trust was accepted as a member. (Doc. 42 at 4-5.) Eventually, Defendants failed to pay both Association and Club expenses as they became due. (Id. at 5.)

Plaintiffs filed suit against Defendant Michael McKay and Beth McKay in the Superior Court of Bryan County seeking recovery for outstanding Association and Club dues and assessments. (Id. at 2; Doc. 1.) Pursuant to 28 U.S.C. § 1332, Defendants invoked this Court's diversity jurisdiction and removed the case to this Court. (Doc. 1 at 1.) In their amended complaint, Plaintiffs seek over $14,000 in unpaid fees, assessments, late fees, and interest owed to the Association and over $153,000 in unpaid fees, assessments, late fees, and interest owed to the Club. (Doc. 28 at 8.) In their answer to the amended complaint, Defendants asserted multiple counterclaims including a counterclaim for deceit, a counterclaim for breach of contract, a counterclaim for declaratory judgment seeking a declaration that "the purported membership obligation is and has been unenforceable," a counterclaim for declaratory judgment seeking a declaration that "a Club member has and always has had the right to resign his or her membership in The Club at any time" without having to pay

3

additional expenses, and a counterclaim for breach of contract and bad faith. (Doc. 30 at 5-20.)

Defendants sought to dismiss some, but not all, of their counterclaims through a notice of dismissal (Doc. 38), however, this Court found that Defendants were unable to use Federal Rule of Civil Procedure 41(a)(1)(A)(i) and 41(c) to dismiss only some of the counterclaims (Doc. 39). Defendants filed a Consent Motion to File Amended Answer and Counterclaim to remove some of the counterclaims. (Doc. 40.) The Court granted the motion on January 10, 2019 (Doc. 41), however, no amended answer has been filed to date. Therefore, all counterclaims remain pending. Plaintiffs now seek summary judgment with respect to their claims (Doc. 42) and Defendants' counterclaims (Doc. 43). In their motions, Plaintiffs generally state that the Association and Club expenses are due under the terms of the various agreements entered into by Defendants and that Defendants have no legal defenses that would permit them to avoid those agreements. (Doc. 42 at 6-13.) With respect to Defendants' counterclaims, Plaintiffs present a myriad of arguments they believe defeat Defendants' counterclaims. (Doc. 43 at 4-24.) Defendants have not responded to either motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

> answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

**ANALYSIS**

I. <u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

After reviewing the record in this case, the Court is satisfied that Plaintiffs have established the absence of any

genuine issue of material fact relating to their entitlement to enforce the agreements. The Georgia Court of Appeals has determined as much. See Lend A Hand Charity, Inc. v. Ford Plantation Club, Inc., 338 Ga. App. 594, 791 S.E.2d 180 (Ga. Ct. App. 2016). Plaintiffs have demonstrated that Defendants are indebted pursuant to the terms and conditions of the Association Declaration and the Club Declaration and that these declarations run with the land and are binding on subsequent lot owners, such as Defendants. See Lend A Hand, 338 Ga. App. 594, 597-98, 791 S.E.2d 180, 182; Timberstone Homeowner's Ass'n, Inc. v. Summerlin, 266 Ga. 322, 323, 467 S.E.2d 330, 331-32 (1996). Defendants' have failed to respond and argue to the contrary. Accordingly, the Court finds that Plaintiffs' Motion for Summary Judgment (Doc. 42) is due to be granted.

II. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS

Due to Defendants' failure to file an amended answer to effectively dismiss some of the counterclaims originally asserted, all five of Defendants' counterclaims remain. Defendants assert the following counterclaims: (1) a counterclaim for deceit; (2) a counterclaim for breach of contract; (3) a counterclaim for declaratory judgment seeking a declaration that "the purported membership obligation is and has been unenforceable;" (4) a counterclaim for declaratory judgment

seeking a declaration that "a Club member has and always has had the right to resign his or her membership in The Club at any time" without having to pay additional expenses; and (5) a counterclaim for breach of contract and bad faith. (Doc. 30 at 5-20.) Plaintiffs move for summary judgment as to all five counterclaims. (Doc. 43.)

A. Counterclaim for Deceit

Defendants' first counterclaims alleges that agents and representatives of the Club and the Association made affirmative representations to Defendants regarding the marketability of the property, the future value of the lots, and other information. Defendants claim that these representations were knowingly false when made, were made to induce Defendants into purchasing property, and that Defendants were induced to purchase because of these misrepresentations. (Doc. 30 at 6-9.) In their motion for summary judgment, Plaintiffs outline numerous bases for the grant of summary judgment on Defendant's first counterclaim. Defendants have not responded in opposition.

The Court finds that summary judgment is due to be granted to Plaintiffs' on the deceit counterclaim. Plaintiffs have presented evidence that neither of the Plaintiffs in this action were involved with the sale and subsequent purchase of the property by Defendants. (Doc. 43 at 6.) Defendants have not countered this assertion and have not supported their

8

allegations that the Club and the Association made affirmative misrepresentations to Defendants which the Defendants relied on. Defendants have not cited to any evidence in the record of what these alleged misrepresentations were. The Court finds that summary judgment is due to be granted on the first counterclaim.

B. <u>Counterclaim for Breach of Contract</u>

Defendants' second counterclaim alleges that Plaintiffs breached the duty of good faith and fair dealing by operating the Club and the Association in a manner that favored one class of membership over another in violation of the contracts between the parties. (Doc. 30 at 9.) Defendants' also allege that Plaintiffs operated The Ford Plantation in a manner that led to the loss of value of homes within the development. (<u>Id.</u> at 9-10.) Plaintiffs contend that they are entitled to summary judgment on this counterclaim because (1) no fiduciary duty exists between a board member and an owner, (2) any alleged breach of the duty of good faith and fair dealing is barred by the business judgment rule, and (3) any claim based on the failure to provide services or amenities fails because Defendants presented no evidence of any failure to maintain amenities. (Doc. 43 at 9-12.) Defendants have not responded in opposition.

The Court finds that summary judgment is also due to be granted to Plaintiffs on Defendants' second counterclaim. As

9

with the first counterclaim, Defendants have not presented any evidence in the record to support their counterclaim. Under Georgia law, "a claim for breach of fiduciary duty requires (1) the existence of a fiduciary relationship, (2) breach of that duty, and (3) damage proximately caused by the breach." Murray-Shanks v. Rabun Gap-Nacoochee Sch., Inc., No. 2:13-CV-00211-WCO, 2014 WL 12516253, at *3 (N.D. Ga. Feb. 4, 2014) (citing Ansley Marine Constr., Inc. v. Swanberg, 660 S.E.2d 6, 9 (Ga. Ct. App. 2008)). A fiduciary relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." Id. (quoting O.C.G.A. § 23-2-58). The party asserting the existence of a confidential relationship bears the burden of establishing its existence. Id.; Campbell v. Landings Ass'n, Inc., 311 Ga. App. 476, 482, 716 S.E.2d 543, 548 (2011). Defendants have not supported their claim for breach of fiduciary duty. Defendants have not set forth the basis under the fiduciary duty arises, what specific actions by Plaintiffs constituted a breach of this duty, or shown that damages have occurred due to these breaches. Defendants similarly fail to support their claims for the breach of the duty of good faith and fair dealing and breach of contract. Defendants claim that

10

Plaintiffs have favored homeowners who have built homes over those who have empty lots by raising assessments, however, Defendants have not cited to any evidence in the record that supports this claim.

C. Counterclaims for Declaratory Judgment

Defendants' seek declarations that "the purported membership obligation is and has been unenforceable," and that "a Club member has and always has had the right to resign his or her membership in The Club at any time" without having to pay additional expenses. (Doc. 30 at 10-19.) Plaintiffs have moved for summary judgment as to both of these claims for declaratory judgment.

As to the first counterclaim for declaratory judgment, Defendants appear to seek declaratory judgment that the Club Declaration is unenforceable for a number of reasons: (1) because the membership obligation in the Club Declaration does not run with the land, (2) because "conditions relating to the marketability" of Club memberships have changed so as to render the membership obligation unenforceable, (3) because the membership obligation violates O.C.G.A. § 44-5-60(d)(3), and (4) because the Club has exempted certain individuals and groups from the membership obligations. (Doc. 30 at 17.) All of these reasons fail. First, the Georgia Court of Appeals has previously found that the Club Declaration runs with the land and is

11

binding on subsequent lot owners. Lend A Hand, 338 Ga. App. at 597-98, 791 S.E.2d at 182. In regards to the second reason, Defendants simply argue that the economic viability of their investment and membership has changed and that they should now be permitted to refuse to pay the membership obligations. Poor performance of an investment does not excuse contractual obligations. Defendants have cited to no law or evidence to support their claim that simply because it has become more expensive to be a Club member that somehow the Club Declaration is void and unenforceable. The third reason also fails. O.C.G.A. § 44-5-60(d)(3) states that "[n]o covenant that prohibits the use or ownership of property within the subdivision may discriminate based on race, creed, color, age, sex, or national origin." Other than a vague claim that the membership obligation "provides a scheme" by which discrimination can occur, Defendants do not actually claim that there is an outright covenant that specifically prohibits ownership due to one of the protected classes or discriminates based on any protected class. Nor do Defendants allege that discrimination has occurred in relation to the Club Declaration or the Club membership obligation. Finally, as to the last reason, Plaintiffs point out that the Club Declarations allow for certain purchasers to be exempt from Club membership requirements. (Doc. 43 at 16.) Defendants had the opportunity to review the Club Declaration

12

before applying for membership in the Club. (Doc. 42, Attach. 9 at 6; 8.) Defendants have not otherwise argued that creating differing classes of membership is somehow illegal or unenforceable.

As to the second counterclaim for declaratory judgment, Defendants seek a declaratory judgment that the Club's position that members can only resign his or her membership upon transfer of the associated lot violates O.C.G.A. § 14-3-620 and is therefore void and unenforceable. (Doc. 30 at 18.) As this Court noted in The Ford Plantation Club, Inc., et al. v. Scott, et al., No. 4:16-cv-00309-WTM-BKE (S.D. Ga. Mar. 29, 2018), even assuming the applicability of O.C.G.A. § 14-3-620 to the Association or the Club, O.C.G.A. § 14-3-620(b) provides that the code section does not "diminish any right of the corporation to enforce any [] obligation" arising from the ownership of land. Accordingly, the Court finds that summary judgment is also due to be granted to Plaintiffs' on Defendants' declaratory judgment counterclaims.

D. Counterclaim for Breach of Contract and Bad Faith

Defendants' final counterclaim contends that they entered into an agreement (the "Catch Up Agreement") with the Club to pay past due monies and assessments in exchange for The Club restoring the membership privileges. (Doc. 30 at 19.) Defendants contend that Plaintiffs breached the Catch Up Agreement when

13

Plaintiffs failed to restore their membership privileges upon Defendants making the agreed upon payments and by transferring $5,000 that had been paid to the Club to the Association without the knowledge or consent of Defendants. (Id. at 19-20.) In their motion for summary judgment, Plaintiffs argue that they are entitled to summary judgment first because the counterclaim is more aptly described as a legal defense for non-payment more so than seeking affirmative relief and that there is not a defense to the validly assessed monies. (Doc. 43 at 21.) Further, Plaintiffs argue that the Defendants did not abide by the terms of the agreement and, therefore, there is no breach. (Id.) Defendants have not responded to Plaintiff's motion for summary judgment.

The Court agrees that Plaintiffs are entitled to summary judgment. The crux of Defendants' breach of contract claim is that they paid all monies owed and their Club membership privileges were not restored. First, looking to the relevant documents in which the Catch Up Agreement was formed, the Court does not find that the parties ever expressly agreed that anything less than a full payment on all amounts outstanding was sufficient to restore Club membership privileges.

In an e-mail from Defendant McKay to Keith Hellmann, the then Chief Financial Officer of The Ford Planation, Defendant McKay offered the following payment schedule:

14

> Based on the information Michelle sent to me, the balance of the club and POA account is $31,152. On or before November 15th I will send $10,000, leaving a balance of $21,152. I know that dues are coming up. I assume the dues are $18,000 and the POA is $2,750 totaling $20,750. I would like to pay the balance of the amount owed and the upcoming dues and fees over the next 13 months beginning December. That total is $41,902. I will pay $2,500 per month in addition to the current charges. I will also make an additional one-time payment in July 2014 of $9,400.

(Doc. 43, Attach. 4 at 281.) Defendant McKay also requested that "upon receipt of the $10,000 my club privileges are reinstated; the club acknowledges that unspent food and beverage minimums are applied to wine purchases from 2010 forward" and that an older purchase of a case of wine be investigated because Defendants did not receive the wine. (Id.)

In response, Keith Hellmann told Defendant McKay that he "looked over your offer and discussed with Nick," and that they could "move forward on this with a couple of comments." (Id. at 283.) The comments included the following: "[u]nfortunately we cannot restore your club privileges until the balance is paid in full. That would have to go before the Board and they typically will not make an exception" and a statement that the offer may need to be revisited if there is an adjustment in the dues for the upcoming year. (Id.) Then, on November 6, 2013, Keith Hellmann again e-mailed Defendant McKay and outlined a payment

15

schedule and stated that "[a]s mentioned on the phone, once we get the ball rolling perhaps we can present to the Board reinstatement of Club privileges before the balance is paid off . . . ." (Id. at 284.)

From review of these e-mails, it was agreed that Defendants would repay all monies owed, both to the Club and the Association, and that, once headway had been made, the request for reinstatement of Club privileges before the balance was paid off could be presented to the Board. It was clear from the e-mails that (1) all outstanding amounts owed must be paid current to be reinstated to Club membership privileges, and (2) the decision of whether Club membership privileges could be restored prior to full payment was a decision made by the Board. Thus, there is no breach of contract for failing to restore Club membership privileges prior to completing full payment. Defendants have not responded and have not supported their claim that the agreement contained a promise to restore Club membership privileges prior to full payment. Additionally, Plaintiffs argue that Defendants never paid the full balance owed, thus negating any contractual duty to restore Defendants' Club membership privileges. It was agreed that Defendants owed $51,850 for past due amounts and 2014 dues and fees for the Club and the Association. (Doc. 43, Attach. 4 at 12; 284.) In his deposition, Defendant McKay testified that he agreed to repay

$51,850 over thirteen months but that, by December 2014, he had not repaid this full amount and had only repaid the Club portion. (Id. at 12-13.) Defendant McKay also testified that he has not paid either Plaintiff since early 2015. (Id. at 5.) Accordingly, the Court is satisfied that Plaintiffs have established the absence of any genuine issue of material fact relating to their entitlement to enforce the agreements and Defendants' counterclaim alleging breach of the Catch Up Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. 42) and Motion for Summary Judgment on Defendants' Counterclaims (Doc. 43) are **GRANTED**. Plaintiffs are **DIRECTED** to provide this Court with an updated calculation of damages, including the per diem interest rate for both the outstanding Association dues and outstanding Club dues. Defendants' counterclaims are **DISMISSED**.

SO ORDERED this 3rd day of December 2019.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA